# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | | |
|---|---|---|
| **EZEQUIEL TORRES AND MATILDE TORRES, BOTH INDIVIDUALLY AND AS LEGAL GUARDIANS AND NEXT FRIENDS OF MAYRA TORRES, INCOMPETENT ADULT, AND AS LEGAL GUARDIANS AND NEXT FRIENDS OF S.T., A MINOR** | § § § § § § § § § | |
| **Plaintiffs** | § § | **CIVIL ACTION NO. 5:12-CV-00128** |
| **CHRISTUS ST. MICHAEL HEALTH SYSTEM; CHRISTUS HEALTH ARK-LA-TEX d/b/a CHRISTUS ST. MICHAEL SYSTEM AND d/b/a CHRISTUS ST. MICHAEL HOSPITAL AND d/b/a CHRISTUS ST. MICHAEL ACUTE CARE HOSPITAL AND d/b/a CHRISTUS ST. MICHAEL HEALTH CARE CENTER; THOMAS WATSON, M.D.; GREGG ANDERSON, CRNA; AND BURNETT & ASSOCIATES ANESTHESIA, P.A.** | § § § § § § § § § § § § § § § | |
| **Defendants** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Ezequiel Torres and Matilde Torres, both Individually and as Legal Guardians and Next Friends of Mayra Torres, an Incompetent Adult, and S.T., a minor, bring this complaint against Defendants Christus St. Michael Health System; Christus Health Ark-La-Tex d/b/a Christus St. Michael Health System and d/b/a Christus St. Michael Hospital and d/b/a Christus

1

St. Michael Acute Care Hospital and d/b/a Christus St. Michael Health Care Center; Thomas Watson, M.D.; Gregg Anderson, CRNA; and Burnett & Associates Anesthesia, P.A.

# I.

# PARTIES

**1.1** Plaintiff, Ezequiel Torres is a natural person whose primary residence is located in DeQueen, Arkansas. Mr. Torres is Mayra Torres' biological father and grandfather to S.T.

**1.2** Plaintiff, Matilde Torres is a natural person whose primary residence is located in DeQueen, Arkansas. Ms. Torres is Mayra Torres' biological mother and grandmother to S.T. Plaintiffs Ezequiel Torres and Matilde Torres were appointed permanent legal guardians of Myra Torres and S.T., a minor.

**1.3** S.T. is a minor child whose primary residence is located in DeQueen, Arkansas.

**1.4** Mayra Torres is a natural person whose primary residence is located in DeQueen, Arkansas. Maya Torres is S.T.'s biological mother.

**1.5** Defendant, Christus St. Michael Health System, is a Texas entity or assumed name business with its principal office in Texarkana, Texas, and may be served with process in accordance with Fed. R. Civ. P. 4 at 2600 St. Michael Dr., Texarkana, Texas 75501.

**1.6** Defendant, Christus Health Ark-La-Tex d/b/a Christus St. Michael Health System and d/b/a Christus St. Michael Hospital and d/b/a Christus St. Michael Acute Care Hospital and d/b/a Christus St. Michael Health Care Center, is a Texas corporation doing business in the state of Texas and may be served with process in accordance with Fed. R. Civ. P. 4 on its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

**1.7** Defendant, Thomas Watson, M.D., is an individual who resides in Bowie County, Texas and may be served with process in accordance with Fed. R. Civ. P. 4 at 5404 Summerhill

Road, Texarkana, Texas 75503. Thomas Watson is a physician licensed to practice medicine in Texas.

**1.8** Defendant, Gregg Anderson, CRNA, is an individual who resides in Bowie County, Texas and may be served with process in accordance with Fed. R. Civ. P. 4 at 4500 Summerhill Road, Texarkana, Texas 75503. Gregg Anderson is a certified registered nurse anesthetist licensed to practice medicine in Texas.

**1.9** Defendant, Burnett & Associates Anesthesia, P.A., is a Texas Professional Association and it may be served with process in accordance with Fed. R. Civ. P. 4 on its registered agent, James Robert Burnett, 6658 Lakeridge, Texarkana, Texas 75503.

**1.10** Defendants are sued in all of their assumed, common or business names pursuant to Fed. R. Civ. P. 17 and notice is hereby given so that real parties in interest may appear and defend this action.

## II.

## JURISDICTION

**2.1** This Court has jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. § 1332(a), because the Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III.

## VENUE

**3.1** Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**3.2** Venue is also proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this district and all Defendants are residents of the state in which the district is located.

## IV.

## TEX. CIV. PRAC. & REM. CODE CHAPTER 74 NOTICE

**4.1** In the event it is determined that the pre-suit notice rules for medical malpractice cases in Texas state court apply, Plaintiffs provided proper notice to Defendants named herein pursuant to Tex. Civ. Prac. & Rem. Code § 74.051. Plaintiffs agree to provide evidence of such notice if the Court requires.

## V.

## FACTS

**5.1** This case concerns the negligent medical care provided to Mayra Torres by Defendants during Ms. Torres' labor, delivery, and post-delivery period that resulted in a permanent brain injury to Mayra Torres. The facts and circumstances surrounding all Defendants' negligence include, but are not limited to the following:

**5.2** On or about December 19, 2010, Mayra Torres presented to Defendant Christus St. Michael Hospital in Texarkana, Texas, at 41 weeks gestation with contractions. Ms. Torres was allowed to labor for 2 hours. After no progression of labor a C-section was elected. At this time, Ms. Torres was sixteen (16) years old, 4'9" in height, and weighed approximately one hundred eighty nine (189) pounds.

**5.3** Ms. Torres received an epidural for local anesthesia but the epidural catheter became dislodged. She was then given a spinal anesthesia. After the spinal anesthesia was administered, Ms. Torres developed cyanosis of the lips and she was intubated. Ms. Torres

experienced episodes of bradycardia (abnormally low heart rate) and she was then given atropine and epinephrine x2. CPR was ongoing at that time.

5.4   Ms. Torres' baby (S.T.) was delivered and Ms. Torres was moved to the intensive care unit with some noted decrease in her mental status. A short time later, Ms. Torres experienced another episode of respiratory distress. She began having significant difficulty breathing and significant shortness of breath. She suffered acute respiratory failure and was emergently intubated by Dr. Parsons. Ms. Torres was noted by nurses to have experienced possible seizure activity upon her arrival in ICU and seizure activity was also noted by Dr. Parsons.

5.5   Ms. Torres experienced significant metabolic acidosis with initial pH immediately post-intubation of 7.272. Prior to intubation, her pH was 7.382 and it was noted that Ms. Torres had a cord ABG (arterial blood gas) performed at 6:25 A.M. with a pH of 7.008. Metabolic acidosis occurs when there is too much acid in the bodily fluids or when the kidneys cannot remove enough acid from the body. A common cause of metabolic acidosis is a prolonged lack of oxygen. Unfortunately, Ms. Torres suffered acute respiratory failure, cardiopulmonary arrest and as a result of that, severe and permanent neurological damage. Ms. Torres suffered an anoxic brain injury which is caused by a lack of oxygen to the brain.

5.6   Defendants' negligence prior to, during and after the birth of S.T., resulted in Ms. Torres' acute respiratory failure and cardiopulmonary arrest which caused the anoxic brain injury. Ms. Torres' injuries were proximately caused by Defendants' negligent acts, including but not limited to the following:

5.7   The dose of local anesthetic (10.5 mg or 1.4 ml hyperbaric bupivacaine) and preservative-free morphine (0.25 mg or 0.5ml) used for the spinal anesthetic in the C-section

delivery was excessive. Ms. Torres is 4' 9" tall, a minor at the time, and a smaller dose should have been given. The high dose of local anesthetic led to a "high spinal" with respiratory insufficiency. The improper dosage was a breach in the standard of care.

**5.8**   Because Ms. Torres had a running epidural infusion prior to placement of the spinal block, the potential for excessive cephalad spread (towards the head) of the block was increased. This required a heightened level of vigilance and monitoring. The epidural level was checked prior to the spinal administration. There is no indication of the height of the epidural block (or that it was checked) prior to placement of the spinal anesthetic. If the epidural was working for labor, then there would have been some local anesthetic effect, which would influence the amount of bupivacaine needed for the spinal block.

**5.9**   The dose of preservative-free morphine ("Duramorph") added to the spinal, 0.25 mg or 0.5 ml, further increased the volume of the spinal anesthetic injected, and also increased the likelihood of excessive cephalad spread.

**5.10**   The anesthesia record indicates that the SaO2 (Oxygen saturation) reading never dropped below the upper 90's, but on the code record, the recording RN notes "cyanosis" at the outset of resuscitation. Cyanosis is a late sign of oxygen desaturation, and is not compatible with SaO2 readings in the upper 90's. The clinical finding of cyanosis demonstrates thta Defendants failed to properly monitor Ms. Torres' SaO2 levels.

**5.11**   The bradycardia (abnormally low heart rate) observed was caused by either direct depression of cardiac accelerator fibers from cephalad spread of the local anesthetic (a high spinal) or as a late sign of hypoxia (reduction of oxygen supply). Both would be associated with respiratory insufficiency. Defendants breached the standard of care because there was a delay in

6

recognition of Ms. Torres' respiratory insufficiency, which resulted in a delay of appropriate resuscitation.

**5.12** Prior to delivery when CPR was being performed, there is no mention of LUD ("left uterine displacement") positioning being used. It is well-described in the medical literature that the gravid uterus will block venous return from the lower half of the body under these conditions. More likely than not, the efforts at CPR (chest compressions) were not producing effective cardiac output, at least until the infant was delivered and the obstruction of the inferior vena cava relieved.

**5.13** Defendants then breached the standard of care by extubating (removal of Ms. Torres' tube that provided oxygen) to nasal canulla oxygen immediately at the end of the procedure. The "code" occurred at approximately 0605-0615. She was left in ICU, and extubated at 0700. Ms. Torres should not have been extubated until she was fully alert, and had been fully evaluated and found to have recovered from intraoperative events (being coded, cyanosis, having a high spinal anesthetic).

**5.14** Immediately upon arrival in the ICU, Ms. Torres' Glasgow coma scale was 3 (the lowest score possible), which is incompatible with maintaining a patient airway independently. She was noted to be suffering from respiratory insufficiency, and required emergent re-intubation. This episode of respiratory insufficiency went unrecognized by the anesthesia provider, and other hospital staff, and caused Ms. Torres to suffer a second hypoxic insult. The failure to recognize Mayra Torres' respiratory insufficiency was also a breach in the standard of care. In fact, her second respiratory emergency was only discovered by another physician not in charge of her care who happened to be walking by Ms. Torres while she was in respiratory distress. Not only did Defendants breach the standard of care by extubating Ms. Torres after she

7

suffered a hypoxic event, they compounded their negligence by failing to properly monitor her after extubation while she suffered her second hypoxic event. Defendants allowed Ms. Torres to suffer through a second respiratory emergency and did not re-intubate her to provide an oxygen supply until 7:20—approximately twenty minutes after she showed signs and symptoms of respiratory distress.

5.15   An echocardiogram performed shortly after admission to the ICU revealed a LVEF (left ventricular ejection fraction) of 25-27%, which is severely depressed cardiac function. A CT scan taken after Ms. Torres' delivery also confirmed diffuse cerebral edema (brain swelling). Mayra Torres suffered a major insult which was not appropriately recognized or managed, and as a result, she suffers from severe, permanent neurologic impairment and injury. Ms. Torres was diagnosed with an anoxic brain injury and she was transferred to Arkansas Medical Center for further medical care on December 20, 2010. On January 20, 2011, she was then transferred to Arkansas Children's Hospital for further treatment and rehabilitation, and remained there until her discharge on February 16, 2011.

5.16   Defendant Christus St. Michael Health System is vicariously liable for the acts of negligence of their servants, borrowed servants, employees and agents, including but not limited to the nursing staff that provided medical care and treatment to Mayra Torres on December 19, 2010 through December 20, 2010. The employees and agents, including the nursing staff, at Defendant Christus St. Michael Health System were negligent in their care of Mayra Torres, including but not limited to negligently administering anesthesia to Mayra Torres, negligently monitoring Ms. Torres condition, negligently performing a high spinal anesthesia following an epidural, negligently supervising and monitoring Ms. Torres' condition following her delivery, negligently extubating Ms. Torres following her delivery, negligently supervising and monitoring

her condition following extubation, and negligently failing to render safe and appropriate anesthesia care and post-anesthesia care.

  **5.17** Defendant Christus Health Ark-La-Tex d/b/a Christus St. Michael Health System and d/b/a Christus St. Michael Hospital and d/b/a Christus St. Michael Acute Care Hospital and d/b/a Christus St. Michael Health Care Center is vicariously liable for the acts of negligence of their servants, borrowed servants, employees and agents, including but not limited to the nursing staff that provided medical care and treatment to Mayra Torres on December 19, 2010 through December 20, 2010. The employees and agents, including the nursing staff, at Defendant Christus Health Ark-La-Tex d/b/a Christus St. Michael Health System and d/b/a Christus St. Michael Hospital and d/b/a Christus St. Michael Acute Care Hospital and d/b/a Christus St. Michael Health Care Center were negligent in their care of Mayra Torres, including but not limited to negligently administering anesthesia to Mayra Torres, negligently monitoring Ms. Torres condition, negligently performing a high spinal anesthesia following an epidural, negligently supervising and monitoring Ms. Torres' condition following her delivery, negligently extubating Ms. Torres following her delivery, negligently supervising and monitoring her condition following extubation, and negligently failing to render safe and appropriate anesthesia care and post-anesthesia care.

  **5.18** Defendant Thomas Watson, M.D., was negligent in his medical care of Mayra Torres, including but not limited to, negligently administering anesthesia to Mayra Torres, negligently monitoring Ms. Torres condition, negligently performing a high spinal anesthesia following an epidural, negligently supervising and monitoring Ms. Torres' condition following her delivery, negligently extubating Ms. Torres following her delivery, negligently supervising and monitoring her condition following extubation, negligently supervising anesthesia staff to

ensure the safe and proper provision of anesthesia to his patient Mayra Torres, negligently supervising anesthesia staff to ensure the safe and timely care to Ms. Torres following her delivery and while in recovery, and negligently failing to render safe and appropriate anesthesia care and post-anesthesia care.

**5.19** Defendant, Gregg Anderson, CRNA, was negligent in his medical care of Mayra Torres, including but not limited to, negligently administering anesthesia to Mayra Torres, negligently monitoring Ms. Torres condition, negligently performing a high spinal anesthesia following an epidural, negligently supervising and monitoring Ms. Torres' condition following her delivery, negligently extubating Ms. Torres following her delivery, negligently supervising and monitoring her condition following extubation, negligently supervising anesthesia staff to ensure the safe and proper provision of anesthesia to his patient Mayra Torres, negligently supervising anesthesia staff to ensure the safe and timely care to Ms. Torres following her delivery and while in recovery, and negligently failing to render safe and appropriate anesthesia care and post-anesthesia care.

**5.20** Defendant Burnett & Associates Anesthesia, P.A., was negligent in its medical care of Mayra Torres, including but not limited to, negligently administering anesthesia to Mayra Torres, negligently monitoring Ms. Torres condition, negligently performing a high spinal anesthesia following an epidural, negligently supervising and monitoring Ms. Torres' condition following her delivery, negligently extubating Ms. Torres following her delivery, negligently supervising and monitoring her condition following extubation, negligently supervising anesthesia staff to ensure the safe and proper provision of anesthesia to his patient Mayra Torres, negligently supervising anesthesia staff to ensure the safe and timely care to Ms. Torres

following her delivery and while in recovery, and negligently failing to render safe and appropriate anesthesia care and post-anesthesia care.

**5.21** As a direct and proximate result of Defendants' negligence, Ms. Torres suffered serious and permanent injury. The damages include, but are not limited to, permanent anoxic brain injury; significant neurocognitive deficits affecting Ms. Torres' communication, memory and cognition; physical tremors and seizures; physical impairment and limitations; physical disfigurement; mental impairment; neurobehavioral impairment and disturbance; executive dysfunction and impairment; memory loss; language impairment; and depression. As a result of her injuries, Ms. Torres will require lifetime medical care and treatment including, but not limited to, physiatrist care and follow up; neurology care and brain injury rehabilitation; long term pharmacotherapy; routine diagnostic follow-up; residential post-acute brain injury care; cognitive therapy; physical and speech therapy; counseling for Ms. Torres and family counseling for her family members; medical case management services; supervised structured life care at home and supported life care program dedicated to brain injury survivors; medical equipment and services for her physical and cognitive disabilities.

## VI.

## CAUSE OF ACTION

**6.1** Defendants Christus Health Ark-La-Tex d/b/a Christus St. Michael Health System and d/b/a Christus St. Michael Hospital and d/b/a Christus St. Michael Acute Care Hospital and d/b/a Christus St. Michael Health Care Center; Thomas Watson, M.D.; Gregg Anderson, CRNA; and Burnett & Associates, P.A. all breached the recognized standard of acceptable professional practice at the time of Mayra Torres' treatment. Defendants failed to act with the ordinary and reasonable care that physicians and healthcare providers would provide in the same or similar

circumstances, and were therefore negligent. Defendants were negligent in the following ways, including but not limited to:

1. Failing to properly administer the proper dosage amount for Mayra Torres' local anesthetic;

2. Failing to properly determine Mayra Torres' epidural block level and height prior to administering the spinal epidural;

3. Negligently administering a high spinal;

4. Failing to properly and safely monitor Mayra Torres after administering her spinal anesthesia;

5. Failing to properly and safely monitor Mayra Torres following her delivery and following her first hypoxic event;

6. Negligently extubating Mayra Torres following her delivery and first hypoxic event;

7. Negligently monitoring and treating Mayra Torres following her extubation;

8. Negligently monitoring and treating Mayra Torres' respiratory distress;

9. Negligently supervising and monitoring nursing and other healthcare staff responsible for treating Mayra Torres following the administration of her anesthesia, through her delivery and post-anesthesia care;

10. Failing to properly and safely monitor and treat Mayra Torres through her post-anesthesia care;

11. Negligent failure to render safe and appropriate anesthesia care, resuscitation care, post-anesthesia care, and post-resuscitation care.

## VII.

## **DAMAGES**

**7.1**　As a proximate result of the Defendants' negligent acts or omissions, Plaintiffs suffered injuries, which would not have otherwise occurred. Plaintiff Ezequiel Torres and Matilde Torres, as legal guardians and next friends of Mayra Torres, plead for all damages available under Texas state law, federal law, and equity including, but not limited to:

1. Past and future physical pain and suffering of Mayra Torres;
2. Past and future mental anguish of Mayra Torres;
3. Past and future physical impairment and disability;
4. Past and future mental impairment;
5. Past and future physical disfigurement;
6. Past and future loss of income and loss of earning capacity;
7. Past and future reasonable charges necessary for medical care, nursing, hospital, rehabilitation services, custodial care, health care, supplies, adaptive living costs, attendant care expenses and other health services;
8. Past and future reasonable value of the loss of consortium with her child, S.T.; and
9. Out-of-pocket expenses and other pecuniary losses.

**7.2** As a proximate result of the Defendants' negligent acts or omissions, Plaintiff Ezequiel Torres and Matilde Torres, individually suffered injuries, which would not have otherwise occurred. They plead for all damages available under Texas state law, federal law and equity, including, but not limited to:

1. Past value of attendant, medical, and custodial care and services provided by Ezequiel Torres and Matilde Torres to their daughter Mayra Torres up until the time of trial;
2. Future value of attendant, medical and custodial care and services provided by Ezequiel Torres and Matilde Torres to their daughter Mayra Torres.
3. Past reasonable and necessary medical and healthcare expenses up until the time of trial;
4. Future reasonable and necessary medical and healthcare expenses; and
5. Out-of-pocket expenses.

**7.3** As a proximate result of the Defendants' negligent acts or omissions, Plaintiff Ezequiel Torres and Matilde Torres, as legal guardians and next friends of S.T., a minor, individually suffered injuries, which would not have otherwise occurred. They plead for all damages available under Texas state law, federal law and equity, including, but not limited to:

1. Past and future loss of consortium with S.T.'s mother, Mayra Torres.

## VIII.

## JURY DEMAND

Plaintiffs assert their rights under the Seventh Amendment to the United States Constitution, and pursuant to Fed. R. Civ. P. 38, demand a trial by jury on all issues.

## IX.

## CONCLUSION

Plaintiffs request that Defendants be cited in terms of law to appear and answer herein: that upon final trial and hearing, the Plaintiffs have a judgment against the Defendant, for the amount of actual damages; and for such other and different amounts as they shall show by proper amendment before trial; for pre and post-judgment interest at the applicable legal rate; for all Court costs incurred in this litigation; and for such other and further relief, at law and in equity, both general and special, to which the Plaintiffs may show themselves entitled to and to which the Court believes them deserving.

Respectfully Submitted,

/s/ Laurie M. Higginbotham
**LAURIE M. HIGGINBOTHAM**
Texas State Bar No. 50511759
**JAMAL K. ALSAFFAR** (*application pending*)
Texas State Bar No. 24027193
**TOM JACOB** (*application pending*)
Texas State Bar No. 24069981
**ARCHULETA, ALSAFFAR & HIGGINBOTHAM**
P.O. Box 340639
1100 Lakeway Drive, Suite 101
Austin, TX 78734
Telephone: (512) 266-7676
Telefax: (512) 266-4646
E-mail: lhigginbotham@govtclaim.com